IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RSCC Wire & Cable LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>Prysmian Cables and Systems USA, LLC,<br><br>    Defendant. | Civil Action No. 1:20-cv-12219<br><br>**JURY DEMAND** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff RSCC Wire & Cable LLC ("RSCC") files this complaint against Defendant Prysmian Cables and Systems USA, LLC ("Prysmian") to stop Prysmian's infringements of U.S. Patent No. 7,339,115 ("the '115 Patent"). RSCC, by and through its counsel, alleges and states, with knowledge as to its own acts and on information and belief as to other matters, as follows:

**PARTIES**

1. RSCC is a limited liability company formed and existing under the laws of the State of Delaware, with a principal place of business at 20 Bradley Park Road, East Granby, Connecticut 06026.

2. RSCC is, and at all relevant times has been, the owner of the '115 Patent.

3. On information and belief, Prysmian is a limited liability company formed and existing under the laws of the State of Delaware, with a principal place of business at 22 Joseph E Warner Boulevard, North Dighton, Massachusetts 02764.

4. On information and belief, Prysmian is a part of the Prysmian Group and conducts business under the brand names "Prysmian" and "Draka."

## JURISDICTION AND VENUE

5. This action arises under the Patent Laws of the United States, Title 35 of the United States Code.

6. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over Prysmian because, *inter alia*, Prysmian has purposefully and intentionally availed itself of the privileges of doing business in this district. Among other things Prysmian has a principal place of business in this district, and upon information and belief, Prysmian is doing business in this district, has significant contacts in this district, has committed acts of infringement in this district, and has caused and continues to cause RSCC injury in this district including by committing, inducing, and contributing to acts of infringement in this district as alleged herein.

8. Venue is proper in this district under 28 U.S.C. § 1400(b) because Prysmian has committed acts of infringement in this district as alleged herein, and Prysmian has a regular and established place of business in this district as alleged herein.

## BACKGROUND

9. RSCC designs and manufactures specially engineered electrical wire and cable products, such as fire-resistant electrical cable products.

10. RSCC is a leading innovator in its industry and holds numerous patents protecting its valuable inventions and technologies. Relevant to this lawsuit, RSCC invented an innovative electrical cable splice, which is protected by the '115 Patent.

11. A splice is a connection between two electrical cables. Splicing typically requires an electrician to cut back the insulation of the electrical cable, electrically connect the conductors, and apply insulation and a jacket to the spliced area.

12. RSCC's invention of the '115 Patent relates to a fire-resistant electrical cable splice.

13. By way of background, the availability of electrical devices during fires can have lifesaving implications. Exit signs and emergency lights help light where to go in an emergency. Hard-wired fire alarms alert people to an emergency situation. In hospitals and nursing homes, electricity is needed to power devices that are used to sustain life. For these and other reasons, government regulations in numerous countries specify that essential electrical circuits be protected in order to ensure that the electrical system maintain an operating condition during a fire to ensure the safety of persons inside the building and also to permit fire-fighting personnel to be more efficient in controlling and extinguishing fires. For example, in certain locations, a minimum amount of time of two hours is required for fire alarms to sound and flash so that all persons are alerted. Therefore, the electrical system during the fire must remain intact at least during such critical periods to allow the electrical fire alarms to continue in operation.

14. Prior to RSCC's invention, it had been established that some essential electrical circuits needed to be capable of operating for at least one hour, and in some other cases two hours or more, to ensure safety of people. Such systems include fire alarm systems, and may also include emergency communications systems, lighting systems, elevator systems, ventilation systems, water pumps for sprinklers, and other electrically powered lifesaving systems. Other essential circuits include control and power circuits for fireman's elevators and those fans and dampers that evacuate smoke or shut off smoke leaking into other areas. In addition, automatic door locks, emergency lighting, generators, fire pumps, strobes, smoke detectors, etc., may also require

appropriate insulation so that they will remain functional for a minimum period of time in a fire situation.

15. Traditional non fire-rated electrical wires were at risk in high temperature environments. They were not designed to sustain operation at high temperatures, and they would quickly degrade in a high temperature environment as may exist in a fire.

16. At the same time, traditional fire-rated electrical cables were limited in that splicing the electrical cables in the field (a location where the wiring is performed) negated the fire rating. More simply, splicing technology had not been developed prior to RSCC's invention that reliably prevented a fire-rated electrical cable from breaking down at the splice in a high temperature environment. As a result, safety code limitations at that time prohibited fire-rated electrical cables from being spliced in the field. This code limitation often forced electrical contractors to run hundreds of feet of electrical cable without interruption.

17. Pulling long runs of fire-rated electrical cable was labor intensive and, if performed improperly, led to damaging the fire-rated electrical cables. Moreover, in some situations, fire-rated electrical cables were needed in lengths exceeding normal manufacture, which required custom manufacturing of fire-rated electrical cable.

18. Against that backdrop, RSCC recognized the need for, and invented, an innovative fire-rated electrical cable splice that does not impinge on the rating of the fire-rated electrical cable.

19. RSCC's innovative fire-resistant electrical cable splice comprises at least two electrical cables; at least one connection, formed by at least one conductor from each of the at least two electrical cables, connected mechanically and electrically; an insulating polymer that is electrically nonconductive at least at temperatures above 500° F., the insulating polymer substantially applied over the connection, wherein the insulating polymer is a ceramifiable silicone

rubber; and a retaining jacket substantially applied over the insulating polymer that allows the insulating polymer to maintain integrity in an environment of at least 1850° F.

20. Recognizing the importance and ground-breaking nature of its innovations, RSCC took steps to protect its rights, including by filing a patent application directed to its invention.

21. The U.S. Patent Office duly and legally issued the '155 Patent on March 4, 2008. A true and correct copy of the '115 Patent is attached hereto as Exhibit A.

22. RSCC owns all right, title, and interest in and to the '115 Patent.

23. RSCC's innovative fire-resistant electrical cable splice has received industry praise and enjoyed commercial success. For example, RSCC offers its VITALink® Taped Splice Kit that practices the claimed invention of the '115 Patent.

24. RSCC has notified Prysmian of the '115 Patent a number of times.

25. For example, on about March 7, 2017, RSCC wrote to Prysmian regarding the '115 Patent. RSCC put Prysmian on notice of the '115 Patent at that time because RSCC had learned that RCR Associates, LLC was providing customers with quotes that included Prysmian's Draka-branded splice kits. On information and belief, after RSCC sent its letter, RCR Associates stopped providing customers with quotes that included the Draka-branded splice kits.

26. On about February 20, 2018, RSCC again wrote to Prysmian regarding the '115 Patent because RSCC learned the Pennsylvania Turnpike Commission's Supplemental Specification and Drawings for Contract No. A-070.26F003-3-02 for the Lehigh Tunnel project included instructions for creating a fire-resistant electrical cable splice using Draka-branded ceramifiable splicing tape. RSCC explained that, if a contractor followed Prysmian's instructions in the Supplemental Specification and Drawings, the contractor would make a fire-resistant electrical cable splice that would infringe one or more claims of the '115 Patent, and that Prysmian

would indirectly infringe one or more claims of the '115 Patent by contributing to the contractor's infringement and by inducing the contractor to infringe.

27. In July of 2018, RSCC learned Prysmian had not been awarded the Pennsylvania Turnpike Commission's Lehigh Tunnel project. RSCC informed Prysmian that it considered that particular matter closed, and that RSCC expected Prysmian to take appropriate action to avoid infringing the '115 Patent, directly or indirectly, in the future.

28. In May of 2020, however, RSCC learned Prysmian had not done so. Prysmian launched a new 2HR fire-resistant electrical cable splice design that uses ceramifiable tape. Prysmian described its new 2HR fire-resistant electrical cable splice design in a UL submission dated April 28, 2020. A true and correct copy of the UL submission dated April 28, 2020 is attached hereto as Exhibit B. A true and correct copy of an updated version of the UL submission dated September 9, 2020 is attached hereto as Exhibit C.

29. Prysmian's UL submissions reference Prysmian's "manufacturer's installation instructions (Technical Information Sheet # 403) dated April 2020." A true and correct copy of Prysmian's Technical Information Sheet # 403 dated April 2020 is attached hereto as Exhibit D.

30. Prysmian's installation instructions in Technical Information Sheet # 403 include, among other things, using Prysmian's Lifeline Ceramifiable Tape (Part Number 593-0100-057) to make fire-resistant electrical cable splices. Prysmian's fire-resistant electrical cable splices made with Prysmian's Lifeline Ceramifiable Tape and pursuant to Prysmian's installation instructions in its Technical Information Sheet # 403 are referred to herein as the "Infringing Splices."

31. RSCC wrote to Prysmian on May 13, 2020, requesting that Prysmian immediately and permanently stop selling its Lifeline Ceramifiable Tape, and that Prysmian immediately and

permanently stop promoting and providing installation instructions for its 2HR fire-resistant electrical cable splice design that uses ceramifiable tape.

32. Prysmian refused to do so. Prysmian instead escalated its infringements by using its Infringing Splices to bid on and win numerous projects.

33. On information and belief, Prysmian bid on and won one or more of the following projects that included the contractors making Infringing Splices: (i) the PATH E&F project in New York, NY; (ii) the I-90 Dartmouth St., Prudential Garage project in Boston, MA; (iii) the I-90 Ted Williams Tunnel project in Boston, MA, (iv) the LA Metro Regional Connector project in Los Angeles, CA, and the PA Turnpike, Allegheny Tunnel project in Somerset County, PA.

34. On information and belief, Prysmian is currently bidding on one or more of the following projects that, if won, will include contractors making Infringing Splices: (i) the I-93 Tip O'Neil Tunnel project in Boston, MA; (ii) the I-90 Tunnel Jet Fans project in Boston, MA; (iii) the I-90 Tunnel Lighting Project in Boston, MA; and (iv) the LA Metro Westside Project in Los Angeles, CA.

35. As a result of Prysmian's improper conduct, RSCC requests injunctive and monetary relief for patent infringement in violation of the Patent Laws of the United States.

**COUNT I: INFRINGEMENT UNDER 35 U.S.C. § 271(a)**

36. RSCC repeats, realleges, and incorporates by references Paragraphs 1 through 35 above as if set forth in full herein.

37. Prysmian makes, uses, offers to sell, sells, and/or imports into the United States infringing fire-resistant electrical cable splices without the consent or authorization of RSCC, including at least the Infringing Splices.

38. Prysmian directly infringes at least claim 1 of the '115 Patent by making, using, offering to sell, selling, and/or importing at least the Infringing Splices in the United States.

39. Prysmian's Infringing Splices satisfy every limitation of claim 1 of the '115 Patent because they are fire-resistant electrical cable splices with: at least two electrical cables; at least one connection, formed by at least one conductor from each of the at least two electrical cables, connected mechanically and electrically; an insulating polymer that is electrically nonconductive at least at temperatures above 500° F., the insulating polymer substantially applied over the connection, wherein the insulating polymer is a ceramifiable silicone rubber; and a retaining jacket substantially applied over the insulating polymer that allows the insulating polymer to maintain integrity in an environment of at least 1850° F.

40. Prysmian's direct infringements have been willful, intentional, and deliberate. Prysmian knew or should have known that making, using, offering to sell, selling, and/or importing the Infringing Splices in the United States would directly infringe claims of the '115 Patent, yet Prysmian infringed and continues to infringe claims of the '115 Patent.

41. RSCC has suffered, and continues to suffer, irreparable harm and damages as a result of Prysmian's direct infringements of the '115 Patent.

42. RSCC has no adequate remedy at law for Prysmian's direct infringements of the '115 Patent.

43. On information and belief, Prysmian's direct infringements of the '115 Patent will continue unless enjoined by this Court.

**COUNT II: INFRINGEMENT UNDER 35 U.S.C. § 271(b)**

44. RSCC repeats, realleges, and incorporates by references Paragraphs 1 through 35 above as if set forth in full herein.

45. Prysmian indirectly infringes at least claim 1 of the '115 Patent by actively inducing infringement of the '115 Patent.

46. A customer, contractor, installer, and/or other end-user of an Infringing Splice

directly infringes at least claim 1 of the '115 Patent when it uses Prysmian's Lifeline Ceramifiable Tape and Prysmian's installation instructions in its Technical Information Sheet # 403 to make and use an Infringing Splice. More specifically, using Prysmian's Lifeline Ceramifiable Tape and following Prysmian's installation instructions results in a fire-resistant electrical cable splice with: at least two electrical cables; at least one connection, formed by at least one conductor from each of the at least two electrical cables, connected mechanically and electrically; an insulating polymer that is electrically nonconductive at least at temperatures above 500° F., the insulating polymer substantially applied over the connection, wherein the insulating polymer is a ceramifiable silicone rubber; and a retaining jacket substantially applied over the insulating polymer that allows the insulating polymer to maintain integrity in an environment of at least 1850° F.

47. On information and belief, the contractors for one or more of the following projects have used Prysmian's Lifeline Ceramifiable Tape and Prysmian's installation instructions in its Technical Information Sheet # 403 to make Infringing Splices that directly infringe at least claim 1 of the '115 Patent: (i) the PATH E&F project in New York, NY; (ii) the I-90 Dartmouth St., Prudential Garage project in Boston, MA; (iii) the I-90 Ted Williams Tunnel project in Boston, MA, (iv) the LA Metro Regional Connector project in Los Angeles, CA, and the PA Turnpike, Allegheny Tunnel project in Somerset County, PA.

48. Prysmian induces infringement of at least claim 1 of the '115 Patent by actively and knowingly aiding and abetting customers, contractors, installers, and/or other end-users to make and use the Infringing Splices in the United States without the consent or authorization of RSCC.

49. Prysmian actively and knowingly aids and abets customers, contractors, installers, and/or other end-users to make and use the Infringing Splices by at least providing its installation

instructions in its Technical Information Sheet # 403.

50. Prysmian knew of the '115 Patent as early as 2017, if not earlier, and yet Prysmian proceeded to launch its Infringing Splice design, including its Lifeline Ceramifiable Tape and its installation instructions in its Technical Information Sheet # 403.

51. Prysmian's indirect infringements have been willful, intentional, and deliberate. Prysmian knew or should have known that actively and knowingly aiding and abetting others to make and use the Infringing Splices in the United States would induce others to directly infringe at least claim 1 of the '115 Patent, yet Prysmian indirectly infringed and, on information and belief, continues to indirectly infringe at least claim 1 of the '115 Patent.

52. RSCC has suffered, and continues to suffer, irreparable harm and damages as a result of Prysmian's indirect infringements of the '115 Patent.

53. RSCC has no adequate remedy at law for Prysmian's indirect infringements of the '115 Patent.

54. On information and belief, Prysmian's indirect infringements of the '115 Patent will continue unless enjoined by this Court.

**COUNT III: INFRINGEMENT UNDER 35 U.S.C. § 271(c)**

55. RSCC repeats, realleges, and incorporates by references Paragraphs 1 through 35 above as if set forth in full herein.

56. Prysmian indirectly infringes at least claim 1 of the '115 Patent by offering to sell or selling within the United States, or importing into the United States, a component of RSCC's patented splice (*i.e.*, Lifeline Ceramifiable Tape; Part Number 593-0100-057) constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of at least claim 1 of the '115 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.

57. A customer, contractor, installer, and/or other end-user of an Infringing Splice directly infringes at least claim 1 of the '115 Patent when it uses Prysmian's Lifeline Ceramifiable Tape to make and use an Infringing Splice. More specifically, using Prysmian's Lifeline Ceramifiable Tape and following Prysmian's installation instructions results in a fire-resistant electrical cable splice with: at least two electrical cables; at least one connection, formed by at least one conductor from each of the at least two electrical cables, connected mechanically and electrically; an insulating polymer that is electrically nonconductive at least at temperatures above 500° F., the insulating polymer substantially applied over the connection, wherein the insulating polymer is a ceramifiable silicone rubber; and a retaining jacket substantially applied over the insulating polymer that allows the insulating polymer to maintain integrity in an environment of at least 1850° F.

58. On information and belief, the contractors for one or more of the following projects have used Prysmian's Lifeline Ceramifiable Tape and Prysmian's installation instructions in its Technical Information Sheet # 403 to make Infringing Splices that directly infringe at least claim 1 of the '115 Patent: (i) the PATH E&F project in New York, NY; (ii) the I-90 Dartmouth St., Prudential Garage project in Boston, MA; (iii) the I-90 Ted Williams Tunnel project in Boston, MA, (iv) the LA Metro Regional Connector project in Los Angeles, CA, and the PA Turnpike, Allegheny Tunnel project in Somerset County, PA.

59. Prysmian knew of the '115 Patent as early as 2017, if not earlier, and yet Prysmian proceeded to launch its Infringing Splice design, including its Lifeline Ceramifiable Tape and its installation instructions in its Technical Information Sheet # 403.

60. On information and belief, Prysmian's Lifeline Ceramifiable Tape's only use is for making fire-resistant electrical cable splices pursuant to Prysmian's installation instructions. Prysmian's Lifeline Ceramifiable Tape's has no substantial, noninfringing use.

61. On information and belief, Prysmian's Lifeline Ceramifiable Tape constitutes a material part of the Infringing Splices and the invention of at least claim 1 of the '115 patent.

62. Prysmian contributed, and continues to contribute, to at least the contractors' direct infringement at least claim 1 of the '115 Patent because Prysmian sold components of an infringing fire-resistant electrical cable splice (e.g., at least the Lifeline Ceramifiable Tape), the components have no substantial, noninfringing uses, the components constitute a material part of the invention of at least claim 1 of the '115 patent, Prysmian has been aware of the '115 patent since at least 2017 and knew that the fire-resistant electrical cable splices for which its components have no other substantial uses are covered by at least claim 1 of the '115 patent, and that a customer's use will directly infringe at least claim 1 of the '115 patent.

63. Prysmian's indirect infringements have been willful, intentional, and deliberate. Prysmian knew or should have known that selling its Lifeline Ceramifiable Tape would contribute to others making and using Infringing Splices in the United States, yet Prysmian indirectly infringed and, on information and belief, continues to indirectly infringe at least claim 1 of the '115 Patent.

64. RSCC has suffered, and continues to suffer, irreparable harm and damages as a result of Prysmian's indirect infringements of the '115 Patent.

65. RSCC has no adequate remedy at law for Prysmian's indirect infringements of the '115 Patent.

66. On information and belief, Prysmian's indirect infringements of the '115 Patent will continue unless enjoined by this Court.

## JURY DEMAND

67. Pursuant to Federal Rule of Civil Procedure 38(b), RSCC hereby demands a trial by jury of all issues so triable.

## RELIEF SOUGHT

Plaintiff RSCC respectfully seeks that the Court grant the following relief:

A. Enter judgment for RSCC and against Prysmian for direct infringement of claims of the '115 Patent;

B. Enter judgment for RSCC and against Prysmian for induced infringement of claims of the '115 Patent;

C. Enter judgment for RSCC and against Prysmian for contributory infringement of claims of the '115 Patent;

D. Enter judgment that Prysmian's infringement of claims of the '115 Patent was and is willful;

E. In accordance with the principles of equity and applicable law, preliminarily and permanently enjoin Prysmian, its officers, directors, principals, agents, sales representatives, servants, employees, successors, assigns, affiliates, subsidiaries, and all those acting in concert or participation with them, from directly or indirectly infringing, inducing infringement or contributing to the infringement of any claim of the '115 Patent;

F. Enter judgment in favor of RSCC and against Prysmian in an amount that will adequately compensate RSCC for Prysmian's infringements, but under no circumstances an amount less than a reasonable royalty for Prysmian's use of RSCC's patented invention;

-14-

      G.      Enter judgment in favor of RSCC and against Prysmian for three times the amount of damages awarded for Prysmian's infringements of the '115 Patent pursuant to 35 U.S.C. § 284 because its infringement has been willful;

      H.      Enter judgment in favor of RSCC and against Prysmian finding that this case is "exceptional" under 35 U.S.C. § 285;

      I.      Enter judgment in favor of RSCC and against Prysmian for pre-judgment interest on all damages awarded;

      J.      Enter judgment in favor of RSCC and against Prysmian for an award to RSCC of its reasonable attorneys' fees, expenses, and costs incurred in this action, to the extent not covered or allowed by the above; and

      K.      Enter such other and further relief as the Court may deem just and proper.

Dated: December 14, 2020                    Respectfully submitted,

*/s/ John E. Nilsson*
John E. Nilsson (BBO# 644085)
  john.nilsson@arnoldporter.com
Jacob Michael Bass* (*pro hac vice* to be filed)
  Jacob.Bass@arnoldporter.com
**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5999

Christopher J. Renk (*pro hac vice* to be filed)
  Chris.Renk@arnoldporter.com
Michael J. Harris (*pro hac vice* to be filed)
  Michael.Harris@arnoldporter.com
**Arnold & Porter Kaye Scholer LLP**
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Telephone: 312.583.2300
Facsimile: 312.583.2360

*Admitted only in NY; practicing law in the District of Columbia during the pendency of his application for admission to the D.C. Bar and under the supervision of lawyers of the firm who are members in good standing of the D.C. Bar

*Attorneys for Plaintiff RSCC Wire & Cable LLC*

-15-